### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
#### (Northern Division)

| | |
|---|---|
| **HOLCIM (US) Inc. d/b/a**<br>**LAFARGEHOLCIM US**<br>   *Plaintiff*,<br><br>**v.**<br><br><br>**BC CONCRETE OF CUMBERLAND, INC.**<br><br>   *Defendant*. | Civil Action No.: 1:20-cv-01650-JMC |

### REPLY MEMORANDUM IN SUPPORT OF
### <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Holcim (US) Inc. d/b/a LafargeHolcim US ("Plaintiff" or "LH"), through its undersigned counsel and pursuant to Fed. R. Civ. P., Rule 56 and Local Rule 105 of the Rules of this Court, respectfully submits this Reply Memorandum in further support of its Motion for Summary Judgment (the "Motion") against Defendant BC Concrete of Cumberland, Inc. ("Defendant" or "BC") and specifically in response to Defendant's Memorandum in Opposition of Plaintiff's Motion for Summary Judgment (the "Opposition").

### <u>PRELIMINARY STATEMENT</u>

Defendant's silence in its Opposition to the undisputable documentary evidence presented in Plaintiff's Motion speaks volumes.  Notwithstanding clear documents evidencing the date and weight of each load of cement picked up by Defendant from Plaintiff's terminal, and that each such load of cement was received and accepted by Defendant as evidenced by the signature of Defendant's trucker, Defendant does not present *any* admissible evidence disputing the date or amount of any load, or that each load identified on the bills of lading signed by Defendant was

received by Defendant.  Although Defendant attempts to create factual issues where none exist, the material (and dispositive) facts remain undisputed: Plaintiff sold Defendant cement pursuant to agreed written terms of sale and Defendant failed to pay for all the cement it purchased and received in accordance with those terms.

In its Opposition, Defendant unartfully attempts to create "factual issues" but fails to deny or dispute any of the material facts.  Contrary to Defendant's strained and misleading arguments, there are no triable issues of fact regarding the principal amount of Defendant's debt to Plaintiff, the calculation of the agreed finance charges for which Defendant is also liable (a mathematical formula), or Defendant's contractual obligation to "reimburse" "all" attorneys' fees Plaintiff has "incurred".

Defendant's transparent strategy in this case has been and continues to be to delay the inevitable judgment to which Plaintiff has always been entitled.  Prompted by the seasonal nature of Defendant's business (which results in its collection of most of its receivables during the winter months) Defendant is well aware that delaying Plaintiff from obtaining the final and enforceable judgment to which it has always been entitled on account of sums admittedly long-past due, substantially prejudices the likelihood of Plaintiff's collection of such amounts.   Indeed, if entry of judgment against Defendant is further delayed there appears to be a real risk that any future judgment – for monies which Defendant cannot truthfully deny it owes Plaintiff – will be readily uncollectible.

Accordingly, Plaintiff respectfully requests that this Honorable Court find that there are no genuine issues of material fact as to Plaintiff's claims and it is entitled to summary judgment against Defendant for (i) the $160,092.95 principal balance remaining due; (ii) accrued and previously unpaid finance charges of $74,558.83 plus $2401.39 per month (or $78.95 per day)

after December 31, 2020; and (iii) $93,909.35 plus Plaintiff's attorneys' fees and costs of collection after December 31, 2020.

## ARGUMENT

Plaintiff is entitled to judgment as a matter of law because the $160,092.95 principal amount of the debt and $74,558.83 in previously unpaid finance charges (through December 31, 2020) are not genuinely in dispute, and Defendant must "reimburse" Plaintiff for "all" the $93,909.35 of attorneys' fees and costs of collection it has incurred (also through December 31, 2020). Defendant should be precluded from contesting the quantum of those attorneys' fees because, through wrongful conduct, Defendant and its counsel caused Plaintiff to incur legal fees that Plaintiff otherwise would not have incurred but for Defendant's tactics throughout this case.

### A.  The Principal Amount of Debt is Not Reasonably Disputed

Defendant first improperly attempts to manufacture a "dispute" regarding the principal amount of the debt which the undeniable admissible evidence establishes has long been owed to Plaintiff. As set forth in Plaintiff's opening Memorandum, during discovery Defendant disputed only that portion of Plaintiff's claims that related to specific sales evidenced by five (5) invoices identified by Plaintiff. In response, Plaintiff promptly provided Defendant with copies of detailed invoices identifying the date, weight and principal amount due on account of every load of cement sold by Plaintiff to Defendant (substantially all of which were picked up by Defendant from Plaintiff's facility), and bills of lading, signed by Defendant's authorized agent, acknowledging Defendant's receipt of each such load of cement purchased by Defendant from plaintiff. True and correct copies of the detailed invoices and signed bills of lading relating to these few purportedly "disputed" sales were attached as Exhibit G to the Declaration of Mr. Pillivant in support of Plaintiff's Motion.

Strikingly, <u>Defendant does not present any facts disputing the truth or accuracy of any date, weight or amount due on account of any sale of cement by Plaintiff to Defendant as reflected on Plaintiff's invoices and bills of lading</u>.  Instead, Defendant merely tries to contend that Defendant's records do not reflect the invoices.[1]   It is axiomatic that Defendant's purported failure to properly enter invoices into its accounting system does not provide evidence of any valid defense.  The Affidavit of Mr. Richard Weimer submitted in opposition to Plaintiff's Motion reflects nothing more.  Defendant nowhere disputes its purchase or receipt of any of the cement sold by Plaintiff to Defendant for which payment is sought.

In the face of signed bills of lading detailing and acknowledging Defendant's receipt of each of the purchases that Defendant made, including specifically those supposedly "disputed", Mr. Weimer's six-paragraph affidavit (to the extent permitted at all) merely posits Defendant's incomplete accounting.  When and whether Defendant entered Plaintiff's invoices into its accounting "system", however, is of no moment here.  Even if Defendant is to be believed, that most certainly does not raise or create a disputed issue of material fact or provide any colorable defense.  Quite simply, <u>Plaintiff has presented clear evidence that Defendant picked up specific identified quantities of cement on specific identified dates for which it has not made payment, and Defendant has presented absolutely no facts whatsoever to create a triable issue of material fact regarding Defendant's failure to pay for any of those purchases</u>.

Defendant's failure to ever contest even one line entry on the bills of lading Defendant executed when it accepted each load of cement is not only extremely material evidence in this

---

[1] Defendant's submissions actually violate the prohibition of this Court's November 2, 2020 Order (Docket #38) insofar as they contain alleged facts and claims not provided during discovery.  Nonetheless, as Plaintiff demonstrates, the materials improperly submitted do not present any genuine dispute concerning any issue of material fact.

case – it is dispositive.  Section 3 of the agreed upon written terms and conditions of sale, provides in part as follows: "[Defendant] may direct Product to be delivered to [Defendant] at either [Plaintiff's] facility or [Defendant's] facility."  Pillivant Decl, Exhibit A. Defendant does not dispute that it elected to pick up the cement at Plaintiff's facility.  Accordingly, the agreed terms provide that "[i]f Product is delivered to [Defendant] at [Plaintiff's] facility, (1) prices are F.O.B. [Plaintiff's] facility, (ii) title and risk of loss pass to [Defendant] upon delivery to [Defendant] or its carrier at [Plaintiff's] facility and (iii) [Defendant] must make claims for shipping loss or damage directly to the carrier."  *Id.* (emphasis added).  In other words, each sales transaction was complete when Defendant's agent "accepted" delivery at Plaintiff's facility and signed a corresponding bill of lading.  *See* Pillivant Decl, Exhibit A. Each signed bill of lading constitutes and confirms Defendant's receipt of the detailed goods and obligation to make payment.  Examples appear as part of Exhibit G to the Pillivant Decl.

Further, pursuant to Section 1 of the written terms and conditions of sale:

> "Products will be deemed accepted by [Defendant] unless [Plaintiff] is notified in writing of non-acceptance within ten days after receipt by [Defendant].  Any claim with respect to Product sold hereunder, including claims based on shortages of goods, will be waived if not brought in writing within ten days of receipt of that shipment or delivery."  *Id.*

Thus, even if (*arguendo*) Defendant presented some yet-to-be-identified "alternative facts" under oath regarding the accuracy of the invoices or bills of lading (which it has not), those claims have long since expired.  In any event, it is entirely irrelevant because Defendant only manufactured its disingenuous "dispute" regarding the amount of the debt <u>after</u> Plaintiff filed this action.

Defendant falsely contends in the Opposition that "since prior to the inception of this lawsuit, [Defendant] disputed the accuracy of the amounts claimed as owing and continues to

do so."  Opposition at p. 1.  Notably and characteristically, this claim and argument are <u>not</u> supported by Mr. Weimer's Affidavit or <u>*any*</u> admissible evidence.  Although Mr. Weimer (impermissibly) swears under oath (in conclusory fashion and without explanation or factual support) that Defendant "dispute[s] that the amount owed is $160,092.95", Mr. Weimer, quite tellingly, does <u>not</u> offer any evidence that prior to this lawsuit Defendant *ever* (let alone "always") disputed the amount Defendant owes Plaintiff. Consistent with Defendant's typical conduct throughout this case, this statement in the Opposition is demonstrably false.  At each and every instance before and during this case, Defendant's only response to Plaintiff's inquiries and proposed settlement efforts was never to contest the amount owed but to claim only that Defendant could not afford to pay.  Lack of liquidity is, of course, <u>not</u> a viable defense to a breach of contract action.  Thus, Defendant tried to create "factual issues" out of whole cloth in a misguided attempt at further delaying entry of judgment.  Quite frankly, Defendant always knew (and still knows) how much it owes Plaintiff, but Defendant continues to improperly delay these proceedings and the inevitable judgment against Defendant to which Plaintiff has been and remains entitled.

The simple <u>facts</u> – as evidenced by unrebutted admissible documents - are that Defendant purchased *and received* amounts of cement that were accurately and properly documented in Plaintiff's bills of lading and invoices, and Defendant has absolutely no evidence or good faith basis to dispute the accuracy of Plaintiff's evidence.  Summary judgment should be entered in favor of Plaintiff in the principal amount of $160,092.95.

## B. <u>The Calculation of Finance Charges is Not Materially in Dispute</u>

Defendant's effort to apparently burden the Court with a trial on how to properly calculate finance charges similarly badly misses the mark, but aptly manifests Defendant's ongoing efforts

to delay and increase Plaintiff's costs of collection.  As an initial matter, the calculation of finance charges is a mathematical equation that certainly does not require a trial or an evidentiary hearing. That being said, the contract between the parties provides quite clearly that: "Invoices not paid in full by the last day of the month following the month of shipment shall be considered past-due and shall bear interest at the rate of 1½% per month or the maximum rate permitted by applicable law, if lower, thereafter until paid."  Pillivant Decl, Exhibit A.

Defendant takes issue with Plaintiff's commercially reasonable and generally accepted calculation of finance charges based on annualizing the monthly interest (1.5% x 12 months = 18% per annum) to obtain a daily interest rate and then applying it to the past due balance. While neither Defendant nor its counsel raised this issue prior to Plaintiff's Motion, Defendant argues that the calculation should be made on a monthly basis.  Because some months have more or less than 30 day, any difference in the result would necessarily result in relatively nominal differences.  Nonetheless, Plaintiff has calculated the accrued and accruing finance charges (through December 31, 2020) using monthly rather than annualized and daily interest to determine finance charges.  An approximately $300 difference in accrued finance charges results. *See* Exhibit A to the January 11, 2021 Declaration of Lawrence E. Tofel, Esq. submitted herewith (the "Tofel Decl.").  Plaintiff will accept the Court's determination of which is the more precise calculation; certainly, there is no need for further delay or a trial to make this mathematical determination.

### C. Attorneys' Fees Do Not Create a Triable Issue of Fact: Defendant Agreed To "*Reimburse*" Plaintiff For "*All*" Collection Costs and Fees. Defendant's Own Acts and Omissions Preclude It From Objecting To The Amount of Fees Actually <u>Incurred by Plaintiff</u>

It is critical to place Defendant's opposition to Plaintiff's attorneys' fee in its proper legal and factual context.

First, Defendant's legal liability for Plaintiff's attorneys' fees in this matter is indisputable and not contingent on any circumstance such as would-be due a "prevailing party". Defendant completed and submitted to Plaintiff a written "Credit Application", a true and accurate copy of which was appended to the Complaint and to Mr. Pillivant's Declaration as Exhibit A to Plaintiff's Motion. Pursuant thereto, Defendant agreed to the "Terms of Payment" included in Exhibit A which provide, in part:

> "[Defendant] agrees to **_reimburse_** [Plaintiff] for **_all_** collection costs, court costs, **_attorneys' fees_** and expenses, and other charges **_incurred_** by Seller." (emphasis added)

*See Travel Comm., Inc. v. Pan Amer. World Airways*, 91 Md. App. 123 (1992), *cert. denied*, 327 Md. 525 (1992) (there is no question that a stipulation in a contract to pay attorneys' fees is valid and can be enforced); *cf. Maxima Corp. v. Cystic Fibrosis Foundation,* 81 Md. App. 602, 568 A.2d 1170 (1990) (held that trial court erred in not awarding attorneys' fees where there was a specific provision in the contract providing for attorneys' fees).

Second, factually, Defendant's opposition to reimbursing Plaintiff's attorneys' fees "is devoid of merit, although not of chutzpah." *Prince George's County v. Sunrise Development*, 330 Md. 297, 315 (1993).[2] From the first moment Plaintiff involved counsel to take steps to enforce Plaintiff's rights to collect the sums that the **undisputed evidence** shows have been owed to Plaintiff for over a year, Defendant has engaged in a pattern and practice intended to simultaneously and exponentially increase Plaintiff's collection costs while delaying entry of the final judgment to which Plaintiff has always been clearly entitled.

---

[2] *Schnabel Foundation Co.*, 292 U.S. App. D.C. 56, 946 F.2d 930, 937 n.5 (D.C. Cir. 1991) ("the legal definition of chutzpah ... is a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan").

At first, this pattern involved ignoring plaintiff's efforts to resolve the matter by deferred payment agreement without the need for litigation.  But that was only the beginning.   Even after the case was commenced Defendant filed a "boilerplate" Answer asserting "defenses" for which there was never any good faith basis in fact or law, and steadfastly failed and refused to even respond to Plaintiff's continuing settlement efforts.

Defendant's practices then expanded to include ignoring Plaintiff's duly issued formal discovery requests (including discovery of Defendant's myriad of frivolous defenses), as well as the wholesale disregard of Plaintiff's efforts to avoid a motion to compel Defendant to provide responses to Plaintiff's narrowly tailored and straightforward interrogatories and request for production of documents.   Characteristically, Defendant's silence required Plaintiff to incur the expense of preparing and filing a motion to compel which only resulted in woefully inadequate discovery responses and minimal disclosures from Defendant.  Further time was expended: a series of court conferences were conducted, eventually resulting in Defendant's supplemental (albeit still materially incomplete) disclosures, including production of the materials (and admissions) upon which this Motion is premised.  Plaintiff even tried to avoid the cost (and delays) of this Motion and requested Defendant's consent to judgment based on the undisputed documentary evidence that had been provided by Plaintiff to Defendant. But still Defendant declined; it invited this Motion (like it did Plaintiff's prior Motion to Compel) and made no proposal for payment of *any amount presently or over time*, all without offering to consent to a judgment in any amount – including the lion's share of the debt to which not even Defendant has the gall to feign a "dispute."

Now, Defendant tries to further delay entry of – and increase Plaintiff's expense in obtaining – the final judgment to which Plaintiff is demonstrably entitled.  It does so by submitting contrived, misleading and irrelevant arguments that are unsupported by (and contrary to) the facts

and law.  Confronted with the clear documentary evidence that indisputably establishes the principal debt due Plaintiff and the mathematical determination of the accrued (and accruing) finance charges thereon, Defendant inappropriately resorts to challenging as excessive the quantum of the collection costs which Defendant's acts and omissions required Plaintiff to incur, notwithstanding Defendant's contractual agreement to "reimburse" Plaintiff for "all" such costs.

Remarkably, while Defendant and its counsel's antics have unnecessarily complicated this case, delayed Plaintiff's enforcement efforts and made this litigation as costly as possible for Plaintiff, Defendant now has the audacity to contend that Plaintiff's actual attorneys' fees for which it seeks reimbursement as Defendant agreed are "unreasonable on their face."  As noted above and in prior proceedings herein, Defendant's continuing misconduct in this case includes, by way of example: (1) abject refusals to participate in settlement discussions *at any time* pre- or post-commencement of this case, (2) bad faith and frivolous denials of facts, (3) bad faith and frivolous assertion of defenses, (4) bad faith refusals to respond to Plaintiff's discovery requests requiring wasteful discovery motions, and (5) bad faith refusal to consent to a judgment against it and in favor of Plaintiff for *any* amount.  It is axiomatic that no party to a dispute is ever obligated to settle a claim against it any more than it is obligated to volunteer disclosure or relieve a plaintiff of its burden to prove its claims.  By the same token, the interests of justice (and quite frankly common sense) dictate that refusal to *ever* consider settlement or provide even minimal discovery absent a formal motion to compel, or refusal to consent to judgment – even in the amount a defendant does not dispute – ought to prohibit a party from then objecting to the costs of those various proceedings as "excessive".

Quite ironically, Plaintiff agrees that the amount of Plaintiff's legal fees could have been – and in fact no doubt should have been – much less.  However, Defendant and its counsel's dilatory

and wrongful etc. acts and omissions have created the circumstance of which Defendant now inappropriately complains.  Thus, Defendant's faux cries of foul should fall on deaf ears because Defendant vexatiously and unnecessarily has made (and continues to make) this case exceedingly more expensive and time consuming for Plaintiff and its counsel than it should be.  Defendant's objection to the calculation of accrued finance charges is a good example: the difference between the calculations submitted in principal support of the Motion (Exhibit C to the Pillivant Decl.) and the calculations submitted herewith (Exhibit A to the Tofel Decl.) are less than $300, likely less than the fees *Defendant's* counsel charged *his own client* to raise the "issue" in opposition.

At every turn, Defendant has caused Plaintiff to take action that should not have been necessary if the Defendant and its counsel were acting in accordance with the rules in this case and otherwise.  Plaintiff had no alternative to litigation other than dropping its claim for payment entirely, and Plaintiff had no alternative during this litigation but to the take the steps it took to enforce its claims in the expeditious time necessary under the business circumstances.

Defendant's mission in this case was clear from the outset – make it is as difficult and expensive as possible for Plaintiff to obtain a judgment against Defendant.  Unfortunately, characteristically utilizing misleading statements, half-truths and untruths[3], Defendant continues to succeed in that misguided and inappropriate crusade and now, without any legal authority and in shocking disregard of Defendant's express contractual obligation to "reimburse" Plaintiff for "all…attorney's fees", asks this Court to deny Plaintiff recovery of the very legal fees Defendant

---

[3] Defendant argues that Plaintiff's discovery responses committed Plaintiff to produce the invoices of its attorneys, but Defendant fails to note (i) Plaintiff's written objections to the discovery request as irrelevant and invading privilege, (ii) that Defendant's contractual obligation is to "*reimburse*" Plaintiff for "*all*" expenses "*incurred*" by Plaintiff, and (iii) Plaintiff's Motion provides admissible evidence of the amount of such fees actually incurred and Plaintiff's agreement to the reasonableness of them through payment.

unnecessarily and improperly forced Plaintiff to incur by its refusal to consider settlement or consent to judgment. Such injustice should not be tolerated or condoned.

Instead, Plaintiff most certainly should not be forced to feel the pain of Defendant's improper and inappropriate litigation tactics and strategy – especially given Plaintiff's unequivocal contractual right to "*reimbursement*" from Defendant of "*all*" Plaintiff's legal fees: "[Defendant] agrees to reimburse [Plaintiff] for all collection costs, court costs, attorneys' fees and expenses, and other charges incurred by Plaintiff." Pillivant Decl, Exhibit A. In sum, as a sole result of Defendant's wrongful conduct before and throughout this litigation, Plaintiff has been forced to incur tens of thousands of dollars in legal fees and Defendant must be made to indemnify Plaintiff for all these costs and expenses pursuant to the express language of the parties' contract.

Plaintiff already confirmed under oath that it has incurred legal fees and costs in the amount of $70,016.35 through November 30, 2020 and the Tofel Decl. confirms and modestly adjusts these amounts. Since then, additional services in connection with the preparation of this Motion (and actually trying to avoid it entirely) have been incurred as well. Plaintiff has confirmed that an additional $24,493.00 has been incurred for services rendered during December 2020, and submits that it is entitled to have that amount included in the judgment to which it is entitled. *See* January 11, 2021 Declaration of Charles K. Pillivant Jr. at Exhibit A.

Applicable authority makes clear that no hearing is required and, Plaintiff submits, that where the obligation is one of "reimbursement" for *obligations* (i.e. not subject to contingency such as success in the collection efforts) which are "incurred" and have also, as a matter of undisputed fact, been paid and approved for payment by the party seeking "reimbursement",

no further third-party review of reasonableness is appropriate or legally required.[4]   Plaintiff respectfully contends that the undisputed evidence submitted by it satisfies any appropriate inquiry or review of the scope of Defendant's liability for Plaintiff's attorneys' fees.   This is not an instance where only an attorney has determined the reasonableness of their own fee. To the contrary, Plaintiff's acceptance, payment, and approval for payment of those amounts, as confirmed in the Declarations of Plaintiff's Charles K. Pillivant, Jr. provides additional indicia, and irrebuttable evidence thereof.

---

[4] Nonetheless, in an effort to hopefully mitigate the damage of Defendant's continuing delay tactics, Plaintiff has submitted, as Exhibit B to the Tofel Decl, true and accurate copies of all of the invoices issued to Plaintiff for attorneys' fees incurred through December 31, 2020.  Where indicated and appropriate, portions of certain entries in these invoices have been redacted to eliminate unrelated, privileged and work-product materials.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in Plaintiff's opening memorandum, Plaintiff respectfully requests that summary judgment be granted in its favor and that a judgment be entered against Defendant for the aggregate of: (i) the $160,092.95 principal balance remaining due; (ii) previously unpaid accrued finance charges of $74,558.83 plus $2,401.39 per month (or $78.95 per day) after December 31, 2020; and (iii) $93,909.35 on account of Plaintiff attorneys' fees and costs seeking collection from Defendant through December, 2020, plus Plaintiff's fees and costs of collection after December 31, 2020.

January 11, 2021

Respectfully submitted,

_____/s/_____

Lawrence E. Tofel, Esq. (admitted *Pro Hac Vice*)
LAWRENCE E. TOFEL, PC
163 Washington Avenue, Suite 5B
Brooklyn, N.Y. 11205
Telephone: (917) 847-1433
letofel@tofellaw.com

_____/s/_____

Nathan D. Adler (Federal Bar No. 22645)
Brian M. Boyle (Federal Bar No. 28242)
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone:    (410) 332-8541
Facsimile:     (410) 332-8543
nda@nqgrg.com
bmb@nqgrg.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of January, 2021, a copy of the foregoing

Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment was filed with the

Court via CM/ECF system and sent first class mail, to:

> Jason Buckel, Esq.
> Buckel, Levasseur, Pillai & Beeman, LLC
> 206 Washington Street
> Cumberland, Maryland 21502
> blpassistant@atlanticbbn.net
>
> Attorneys for Defendant

_____/s/_____

Lawrence E. Tofel, Esq.