IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HOLCIM (US), INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: 1:20-cv-01650-JMC |
| BC CONCRETE OF CUMBERLAND, INC. | * | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

At its core, this case revolves around the purchase of, and subsequent failure to pay for, cement. Plaintiff Holcim (US) Inc. ("Holcim") manufactures and distributes cement, among other places, in Maryland. Defendant BC Concrete of Cumberland ("BC Concrete") entered into a contract with Holcim and began purchasing and receiving shipments of cement from Holcim's Hagerstown, Maryland facility. Ultimately, BC Concrete stopped paying Holcim's invoices, yet continued to take delivery of new shipments, amassing thousands of dollars in overdue principal balance and related financing charges. Holcim filed suit on June 9, 2020, (ECF No. 1), and the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4 (D. Md. 2018). (ECF Nos. 22; 23). Holcim has moved for summary judgment. (ECF No. 40). The Court has now considered Holcim's motion, BC Concrete's Opposition thereto, and Holcim's Reply. (ECF Nos. 40, 41, 42). For the reasons set forth more fully below, Holcim's Motion for Summary Judgment (ECF No. 40), is GRANTED in part and DENIED in part.

1

**BACKGROUND**

BC Concrete sought and obtained credit to purchase cement through Holcim in August 2017. (ECF Nos. 40-1 at 2; 40-3). The credit application contained "Terms and Conditions of Sale," ("Terms and Conditions") which are "applicable to all purchases and sales of [Holcim's] materials [and/or] products." (ECF No. 40-3 at 3). Most notably, the Terms and Conditions begin by setting out the following "Terms of Payment":

> Upon approval of Buyer's credit, all invoices will be due at the gross amount and payable not later than the last day of the month following shipment. Each shipment shall be considered a separate and independent transaction and payment therefor shall be made accordingly. All invoices are payable at the address shown on the invoice. A prompt payment discount in the amount stated on the invoice (if any) will be allowed on payments received by the 10th of the month for shipments made during the previous month, provided no past due balances are outstanding at such time.

(ECF No. 40-3 at 3).

Holcim approved BC Concrete's credit application and the parties began conducting transactions in September 2017. (ECF No. 40-6). In its response to the instant motion, BC Concrete submitted a "Purchase Journal," which it contends documents purchases it made from August 1, 2017 to October 31, 2020. (ECF Nos. 41-1 at 2; 40-6). Each entry in the Purchase Journal reflects the following information: Date, Account ID/Account Description, Invoice/CM#, Line Description, Debit Amount, and Credit Amount. *Id.* BC Concrete also relies on a Purchase Receive [sic] Inventory List ("Inventory List"), which "itemiz[es] invoices received by [BC Concrete]." (ECF Nos. 41-1 at 2; 40-7). The Inventory List notably contains invoice numbers, whether those invoices are "Past Due" or "Paid in full," and the "Net Due" amount. (ECF No. 40-7). Finally, BC Concrete provided a "Payment List," which "itemize[s] payments made on behalf of [BC Concrete] to [Holcim]." (ECF Nos. 41-1 at 2; 40-8).

## I. *Principal Balance*

BC Concrete's Inventory List contains eighteen "Past Due" Invoices: Invoice No. 711778810 ($7,970.62); Invoice No. 711874569 ($14,735.70); Invoice No. 711874570 ($5,861.52); Invoice No. 711908339 ($8,851.50); Invoice No. 711908340 ($5,812.38); Invoice No. 711948941 ($5,884.20); Invoice No. 711963908 ($6,293.70); Invoice No. 712022342 ($5,792.85); Invoice No. 712022343 ($17,866.67); Invoice No. 712055080 ($2,913.75); Invoice No. 712097215 ($2,979.90); Invoice No. 712163797 ($8,895.60); Invoice No. 712163798 ($2,979.90); Invoice No. 712242117 ($3,112.20); Invoice No. 712290329 ($6,281.10); Invoice No. 712290330 ($3,115.48); Invoice No. 712346114 (5,521.95); Invoice No. 712373418 ($6,337.80). (ECF No. 40-7 at 5). In all, BC Concrete's past due invoices—per its own Inventory List—amount to $121,206.82. *Id.*

Each of BC Concrete's past due invoices are also reflected as line items in BC Concrete's Purchase Journal. (ECF No. 40-6 at 19–21). Holcim produced an Account Statement for BC Concrete dated May 1, 2020. (ECF No. 40-4). The Account Statement similarly lists the aforementioned past due invoices and amounts. *Id.* A discrepancy, however, appears across these documents with regard to Invoice No. 711778810. The BC Concrete Purchase Journal and Holcim Account Statement indicate that the original invoice amounted to $17,790.62. (ECF Nos. 40-6 at 19; 40-4 at 1). BC Concrete's Inventory List shows $7,970.62 of the original amount as past due. (ECF No. 40-7 at 5). Holcim's Account Statement shows $12,970.62 of the original amount as past due. (ECF No. 40-4 at 1).

BC Concrete's Payment List shows two $5,000 payments made to Holcim: the first on April 7, 2020, and the second on May 6, 2020. (ECF No. 40-8 at 4). The first $5,000 payment, received before Holcim's May 1, 2020 Account Statement, was credited to Invoice No. 711778810

3

(thereby reducing the principal balance from $17,790.62 to $12,970.62). BC Concrete credited the second $5,000 payment to the principal balance of Invoice No. 711778810, as reflected by the Inventory List showing a past due amount of $7,970.62. (ECF No. 40-7 at 5). Holcim applied the payment to financing charges. (ECF No. 40-2 at 4–5). Therefore, per Holcim's Account Statement, Invoice No. 711778810 remains $12,970.62. (ECF Nos. 40-4).

Holcim's Account Statement contains five additional invoices, which do not appear in any of BC Concrete's records: Invoice No. 0711799695 (dated October 31, 2019 in the amount of $14,644.35); Invoice No. 0712055081 (dated December 15, 2019 in the amount of $5,862.15); Invoice No. 0712083756 (dated December 22, 2019 in the amount of $2,920.05); Invoice No. 0712119998 (dated January 5, 2020 in the amount of $6,117.43); and Invoice No. 0712242116 (dated February 9, 2020 in the amount of $6,350.40). These five invoices total $35,894.38 more in alleged past due principal due to Holcim. Additionally, Holcim's Account Statement documents a $3,008.25 overpayment on Invoice No. 0711562729 and a $1,000.00 underpayment on Invoice No. 0711682666, which Holcim believes to be inadvertent. (ECF Nos. 40-4 at 1; 40-1 at 3). BC Concrete's Payment list show Invoice Nos. 0711562729 and 0711682666 as "paid in full." (ECF No. 40-7 at 4). With these offsets and additional invoices, Holcim's records document $160,092.95 in overdue principal balance. (ECF No. 40-4). Thus, the parties' respective records cannot be fully reconciled, reflecting a difference of $38,886.13.

## II.   *Financing Charges*

The Terms of Payment portion of Holcim's credit application further provides the following as it pertains to financing charges:

> Invoices not paid in full by the last day of the month following the month of shipment shall be considered past-due and shall bear interest at the rate of 1 1/2% per month or the maximum rate permitted by applicable law, if lower, thereafter until paid. . . .

4

(ECF No. 40-3 at 3).

Holcim calculated financing charges on the past due principal balances each month by "aggregate[ing] past due balance[s] at the of that month, and utilizing the agreed rate of 18% per annum (1.5% per month), determined a per diem finance charge on account of that accrued principal balance and multiplied that amount by the number of days in the respective month." (ECF No. 40-1 at 4–5). Holcim itemized BC Concrete's monthly financing charges from September 2017 through November 2020 and determined that BC Concrete owed a total of $77,437.31. (ECF No. 40-5). BC Concrete objects to the method of calculation—i.e., utilizing an annual rate of 18% to calculate a per diem amount—because Holcim's method "results in the finance charges alleged being greater than 1.5% per month and in totality creates a greater obligation for interest." (ECF No. 41-1 at 3). BC Concrete, using Holcim's past due amounts, calculated financing charges by multiplying the monthly past due amount (for the same September 2017 to November 2020 period) by 1.5%. (ECF No. 41-3). Using this method, BC Concrete calculated a total of $77,157.43 in owed financing charges. *Id.* Ultimately, this amounts to a difference of $279.87.[1]

### III. Attorneys' Fees

The final pertinent provision of Holcim's Terms of Payment provides that "Buyer agrees to reimburse Seller for all collection costs, court costs, attorneys' fees and expenses, and other charges incurred by Seller." (ECF No. 40-3 at 3). Holcim asserts that, up through the filing of the instant motion for summary judgment, it incurred attorneys' fees and expenses in the amount of $70,016.35. (ECF No. 40-1 at 5). In BC Concrete's Response, it suggests that, without

---

[1] In Reply, Holcim acknowledges this difference, and notes that it "will accept the Court's determination of which is the more precise calculation." (ECF No. 42 at 7).

explanation or verification of the amounts claimed, these fees are "unreasonable on their face." (ECF No. 41-1 at 4). Pressed to support its claim of attorneys' fees, Holcim attached billing records for this matter to its Reply, (ECF No. 42-3), and dedicated much of the same justifying its claim. (ECF Nos. 42 at 7–13; 42-1). In Holcim's Reply, factoring in additional fees through December 31, 2020, Holcim increased its request for attorneys' fees to $93,309.35. (ECF No. 42 at 14).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck*

*Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## DISCUSSION

### I.   *Principal Balance*

The parties' submissions make clear that a principal balance of $121,206.82 is not genuinely in dispute. Simply put, Holcim and BC Concrete agree that Invoice Nos. 711778810 ($7,970.62); 711874569 ($14,735.70); 711874570 ($5,861.52); 711908339 ($8,851.50); 711908340 ($5,812.38); 711948941 ($5,884.20); 711963908 ($6,293.70); 712022342 ($5,792.85); 712022343 ($17,866.67); 712055080 ($2,913.75); 712097215 ($2,979.90); 712163797 ($8,895.60); 712163798 ($2,979.90); 712242117 ($3,112.20); 712290329 ($6,281.10); 712290330 ($3,115.48); 712346114 (5,521.95); and 712373418 ($6,337.80), are past due and owed to Holcim. (ECF Nos. 40-4; 40-7 at 5). Indeed, in BC Concrete's Response, it asserts that it "has produced multiple documents supporting their position that the principal amount owed is $121,206.82." (ECF No. 41-1 at 2). Accordingly, the Court shall enter partial summary judgment as to $121,206.82 of principal balance.

Invoice Nos. 0711682666 ($1,000); 0711799695 ($14,644.35); 0712055081 ($5,862.15); 0712083756 ($2,920.05); 0712119998 ($6,117.43); and 0712242116 ($6,350.40), and the principal amounts of each, remain genuinely in dispute. Holcim has produced a BC Concrete Account Statement (ECF No. 40-4), BC Concrete Invoices (ECF No. 40-9 at 1–5) and the associated Bills of Lading from each shipment giving rise to the five additional invoices, for which Holcim believes it is owed. (ECF No. 40-9 at 6–17). BC Concrete's Inventory list, however,

shows no indication of these invoices. (ECF No. 40-7). Additionally, application of BC Concrete's May 6, 2020 $5,000 payment is genuinely in dispute. It appears to the Court that BC Concrete's April 7, 2020 $5,000 payment was applied to the principal balance of Invoice No. 0711778810 while thousands of dollars in financing charges had already accrued. Holcim's Terms and Conditions are silent as to the order in which lump sums of money are applied to an account with past due balances and increasing financing charges. It is, therefore, possible that a reasonable jury could credit BC Concrete's argument that the May 6, 2020 payment, in accord with the parties' prior dealings, should be applied to principal past due balance of the oldest existing invoice. This evidence demonstrates that Holcim may, in fact, be owed an additional $38,886.13 in principal balance.[2]

Yet, under Rule 56, the Court must determine whether there exists a dispute as to material facts such that a reasonable jury could return a verdict for the non-movant. Under that standard, BC Concrete has produced evidence to survive summary judgment as it pertains to the additional $38,886.13 claimed by Holcim. BC Concrete has produced various business records, including its Purchase Journal and Payment List, none of which indicate the five contested invoices. The sixth invoice, in BC Concrete's records, is marked "paid in full." Therefore, it cannot be said that BC Concrete's defense—that it does not owe Holcim $38,886.13 in principal balance—is "factually unsupported." *Heckman*, 962 F. Supp. 2d at 799–800 (citation omitted). Indeed, while the Court does not seek to resolve the dispute here, a reasonable jury *could* credit BC Concrete's accounting and render a verdict in its favor. Accordingly, judgment as a matter of law as to the disputed invoices would be improper.

---

[2] Additional invoice balances ($36,894.38) plus BC Concrete's disputed $5,000 payment, minus BC Concrete's $3,008.25 overpayment equals $38,886.13.

## II.     *Financing Charges*

Following a similar rationale as that applied above, the Court finds that there is no genuine dispute of material fact with regard to $80,676.13 in financing charges owed to Holcim. Holcim originally sought $77,437.31 in financing charges (through and including November 30, 2020), plus $78.95 per day thereafter, by assessing an 18% per annum fee to past due principal balances. (ECF No. 40-5). BC Concrete, taking Holcim's monthly principal balance calculations and applying a 1.5% monthly fee, calculates that its owed financing charges amount to $77,157.43 (through and including November 30, 2020). (ECF No. 41-3). Taking Holcim's past due principal balance calculations as true, BC Concrete only genuinely disputes $279.87 of the total financing charges through November 30, 2020. Put conversely, BC Concrete does *not* dispute $77,157.43 of financing charges Holcim seeks. The parties' determination of financing charges, however, presumes the validity of the disputed invoices (Invoice Nos. 0711682666 ($1,000); 0711799695 ($14,644.35); 0712055081 ($5,862.15); 0712083756 ($2,920.05); 0712119998 ($6,117.43); and 0712242116 ($6,350.40)). The Court will award the calculated financing charges as calculated by BC Concrete from October 2017 through November 2019—$49,727.97—as that amount predates the disputed invoices.

The Court will also award partial financing charges for the months from December 2019 to present. In calculating the amount of financing charges not genuinely in dispute between December 2019 and present day, the Court determined the month in which each contested invoice became past due, reduced it from the monthly principal balance owed, and multiplied the new balance owed by 1.5%. This approach is supported by Holcim's Terms and Conditions— "[i]nvoices not paid in full by the last day of the month following the month of the shipment

shall . . . bear interest at the rate of 1 1/2 % per month," and BC Concrete's method of calculation. (ECF No. 40-3 at 3).

For example, the first disputed invoices (Invoice Nos. 0711682666 and 0711799695) became past due after November 30, 2019, because they arose from shipments delivered on October 13, 2019 and October 31, 2019, respectively. Therefore, while the parties determined the December 2019 past due amount equaled $132,438.97, *see* ECF Nos. 40-5, 41-3, 42-2), the December 2019 past due amount not genuinely in dispute—i.e., less $15,644.35 from Invoice Nos. 0711682666 and 0711799695—equals $116,794.62. A principal past due balance of $116,794.62 multiplied by 1.5% equals a financing charge of $1,751.92 for the month of December 2019. The remaining months' financing charges, after removing the disputed invoices, are as follows: (1) $1,682.95 for January 2020 ($127,840.79 − $15,644.35 = $112,196.44 x 0.015 = $1,682.95);[3] (2) $1,649.21 for February 2020 ($134,374.02 − $24,426.55 = $109,947.47 x 0.015 = $1,649.21);[4] (3) $1,840.34 for March 2020 ($153,233.20 − $30,543.98 = $122,689.22 x 0.015 = $1,840.34);[5] (4) $1,847.98 a month for April, May, June, July, August, September, October, November, December 2020 for a total of $16,631.82 ($160,092.95 − $36,894.38 = $123,198.57 x 0.015 = $1,847.98 per month).[6] Holcim also seeks financing charges for each month after it completed its calculations.

---

[3] Invoice Nos. 0711682666 and 0711799695 were removed from the January 2020 past due principal balance. (ECF No. 40-4).

[4] Invoice Nos. 0711682666, 0711799695, 0712055081 and 0712083756 were removed from the February 2020 past due principal balance. (ECF No. 40-4).

[5] Invoice Nos. 0711682666, 0711799695, 0712055081, 0712083756, and 0712119998 were removed from the March 2020 past due principal balance. (ECF No. 40-4).

[6] Invoice Nos. 0711682666, 0711799695, 0712055081, 0712083756, 0712119998, and 0712242116 were removed from the April, May, June, July, August, September, October and November 2020, past due principal balances. (ECF No. 40-4).

The Court will award $1,847.98 a month for January, February, March, and April 2021 for a total of $7,391.92.

## III. Attorneys' Fees

Holcim's Terms of Payment, to which BC Concrete agreed by submitting the Credit Application, contained a fee shifting agreement. The contractual provision provides that "Buyer agrees to reimburse Seller for all collection costs, court costs, attorneys' fees and expenses, and other charges incurred by Seller." (ECF No. 40-3 at 3).

Under Maryland law,[7] courts apply the "objective theory" of contract interpretation, pursuant to which, a court is to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Spacesaver Sys., Inc. v. Adam*, 98 A.3d 264, 268 (D. Md. 2014). That is to say, "when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed," and as a result, "the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean." *Spacesaver*, 98 A.3d at 268–69 (citation omitted).

Importantly, however, "Maryland law limits attorney[s'] fee awards to the reasonable fees actually incurred, regardless of a contractual provision to the contrary." *Wells Fargo Bank, N. A. v. Global Research Services, LLC*, Civ. No. RWT-13-3785, 2015 WL 302828 at *1 (D. Md. Jan. 22, 2015) (citing *SunTrust Bank v. Goldman*, 201 Md. App. 390, 401 (2011)); *see also Synergics Energy Servs., LLC v. Algonquin Power Fund, Inc., (Am.), Inc.*, Civ. No. ELH-13-2257, 2014 WL 2812230 at *21 n.12 (D. Md. June 20, 2014) ("[e]ven in the absence of a contract term limiting

---

[7] The Credit Application contained a choice of law provision, which states, "[t]his agreement, and sales hereunder, shall be governed by the laws of the state in which Seller's plant/terminal is located from which delivery or shipment to buyer is made." (ECF No. 40-3 at 3). Holcim's plant where delivery was made to BC Concrete is in Hagerstown, Maryland. (ECF NO. 40-9 at 6–17).

recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." (citation omitted)).  The party seeking to recover attorneys' fees bears the burden of establishing the reasonableness of the fee sought.  *See Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.*, 380 Md. 285, 316 (2004) (citation omitted).  Where a party seeks attorneys' fees pursuant to a contractual agreement, as here, Rule 19-301.5 of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") guides the Court's analysis as to whether a fee is reasonable.[8]

BC Concrete's chief objection to Holcim's claim of attorneys' fees is that the claim is "devoid of legal bills, invoices for court cost, or even a cursory description of counsel's alleged time expended or billable rates." (ECF No. 41-1 at 6).  Holcim, in its Reply, submitted copies of all invoices issued to Holcim for attorneys' fees incurred through December 31, 2021 ("Holcim Invoices"), in addition to a sworn declaration from Plaintiff's collections counsel, Attorney Tofel. (ECF Nos. 42-1; 42-3).[9]  The Court finds, after review of the Holcim Invoices and Plaintiff's

---

[8] Rule 19-301.5 provides eight factors for consideration "in determining the reasonableness of a fee":
    (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
    (3) the fee customarily charged in the locality for similar legal services;
    (4) the amount involved and the results obtained;
    (5) the time limitations imposed by the client or by the circumstances;
    (6) the nature and length of the professional relationship with the client;
    (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
    (8) whether the fee is fixed or contingent.
MARPC 19-301.5(a).  These factors closely align with those considered in a "Lodestar Method" analysis, where a fee shifting *statute* is implicated.  *See Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 416 Md. 325, 334 (2010); *Erny on behalf of India Globalization Capital, Inc. v. MuKunda*, Civ No. DKC-18-3698, 2020 WL 3639978 at *4 (D. Md. July 6, 2020).

[9] The Court notes that BC Concrete did not seek leave to file a Surreply on this issue, despite Holcim's in-depth fee briefing and documentation contained in its Reply.

counsel's declaration, in consideration of MARPC 19-301.5 and this Court's Local Rules, that $93,904.35 is a reasonable fee actually incurred by Holcim.[10] (ECF No. 42-3).

Such an award accords with MARPC 19-301.5. Attorney Tofel and local counsel (Attorneys Adler and Boyle) possess nearly 80 years of combined experience in law practice. In all, they recorded over 220 hours in pursuing this matter before the inception of litigation, through filing the complaint, conducting discovery, and summary judgment. Holcim's counsel was unable to complete other legal work while pursing the instant matter. Attorney Tofel, who is based in New York and has represented Holcim in excess of 35 years, charged Holcim approximately $415 per hour. Such an hourly rate is within this Court's guidelines regarding hourly rates. *See* Loc. R. App'x B. Under the guidelines, it is customary for attorneys with such experience to charge up to $475 per hour. Attorney Adler has been admitted to the Maryland Bar for approximately 29 years and charges an hourly fee of $450. Attorney Boyle has been admitted to the Maryland Bar for approximately 15 years and charges an hourly fee of $410. These rates are also within the Court's guidelines, which permit attorneys of similar experience to charge $475 and $425 per hour, respectively. *See* Loc. R. App'x B.

Given the above discussion, Holcim has succeeded in obtaining the vast majority of damages claimed. Holcim's counsel has maintained a lengthy professional relationship with Holcim. Both Holcim's collections counsel and local counsel are experienced, reputable, and able attorneys. Finally, Holcim's counsel billed its services at a fixed hourly rate. (ECF No. 42-1 at 5–7). In short, there is no genuine dispute to the attorneys' fees reasonably incurred by Holcim.

---

[10] Holcim's invoices actually total $94,469.35; however, in calculating attorneys' fees for the three principal attorneys on this matter, Holcim omitted 1.2 hours billed by a fourth attorney and seek $93,909.35. Such an omission reduced Holcim's fee total by $560.00, yet the billing records indicate a charge of $564.00. Accordingly, the Court will reduce Holcim's requested fee award by the additional $4.00. (ECF No. 42-3 at 12).

In accord with the Terms of Payment provision in Holcim's credit application, the Court will grant the reasonable and incurred attorneys' fees of $93,904.35.

## CONCLUSION

For the foregoing reasons, the Court shall grant in part Holcim's Motion for Summary Judgment in the following amounts:

| | |
|---|---|
| **Principal Balance** | $121,206.82 |
| **Financing Charges** | $80,676.13 |
| **Attorneys' Fees** | $93,904.35 |
| **Total** | $295,787.35 |

The following are still genuinely in dispute: (1) application of BC Concrete's May 6, 2020 $5,000 payment; (2) Invoice Nos. 0711682666 ($1,000); 0711799695 ($14,644.35); 0712055081 ($5,862.15); 0712083756 ($2,920.05); 0712119998 ($6,117.43); and 0712242116 ($6,350.40); Financing charges in the amount of $3,488.26. Combined, the amount genuinely in dispute now totals $42,374.39.

It is worth noting that this Court will exercise its discretion to retain supplemental jurisdiction over this matter, even though the amount in controversy is now less than the statutorily required $75,000 minimum. *See* 28 U.S.C. § 1332(a). For one, "because the presence of diversity jurisdiction is generally determined at the time of filing," *McNulty v. Casero*, Civ. No. SAG-16-2426, 2020 WL 3060396 at *2 (D. Md. June 9, 2020), it is a "well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though . . . the amount recovered falls short of [the statutory minimum]." *Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970).

The Fourth Circuit's decision in *Shanaghan v. Cahill* directs the same result. 58 F.3d 106 (4th Cir. 1995). There, the Court held that the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367, "should apply when the amount in controversy falls below the [statutory minimum] threshold, just as it does when a federal question or a diverse claim falls out of a case." *Id.* at 110. *Shanaghan* further set out a two-part test to guide courts' exercise of discretion in determining whether to exercise supplemental jurisdiction. First, the Court must "look to the face of the complaint itself to determine whether it is a legal certainty that plaintiff's claims do not reach the required amount." *Id.* at 112 (citation omitted). "Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Id.* Second, the Court considers the following five factors in deciding whether to retain jurisdiction over the remainder of the case:

> (1) an evaluation of the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and energy that the federal court already has expended in connection with the case, and whether it might be more efficient to just keep it; [and] (5) whether the case presents some significant issue of state law best decided in state court.

*Peiffer v. King Pontiac Buick GMC, Inc.*, 105 F. Supp. 2d 470, 472–73 (D. Md. 2000); *see Shanaghan*, 58 F.3d at 112 (noting the same factors in narrative discussion).

To the first point, Holcim's Complaint satisfactorily plead an amount in controversy in excess of $75,000. (ECF No. 1 at 2–6). Only one *Shanaghan* factor—factor three—supports dismissal. "The Maryland Rules of Civil Procedure allow for claims dismissed from this Court for lack of subject matter jurisdiction to be filed in Maryland state court, so long as those claims

15

(1) were timely filed in this Court under the relevant statute(s) of limitations, and (2) are filed within thirty days of this Court's order dismissing the case." *McNulty*, 2020 WL 3060396 at *4 (D. Md. June 9, 2020) (citing Md. Rule 2-101(c)).

Otherwise, the remaining four *Shanaghan* factors tend to support retaining jurisdiction. This Court has overseen management of this case since its inception in June 2020. The Court has resolved various discovery disputes, including Holcim's Motion to Compel. (ECF No. 24). Judicial economy would be well served to retain jurisdiction and see this matter through final resolution. The amount claimed by Holcim in its complaint was made in good faith and there is no evidence to the contrary. Given the Court's familiarity with the claims and defenses from overseeing this case, it finds that "it might be more efficient to just keep it." *Peiffer*, 105 F. Supp. 2d at 472. Finally, there exists no significant issue of state law that would be better left to the Maryland courts. Accordingly, the facts and circumstances of this case, viewed in light of *Shanaghan*, cause this Court to exercise supplemental jurisdiction and retain this case.

A separate order follows.

Date: May 10, 2021                                              /s/
                                                        J. Mark Coulson
                                                        United States Magistrate Judge